# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jun 06, 2025
s/ K. Reed
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Dark purple Apple iPhone [with cracked screen in upper left corner] with a clear phone case with a bear on the back-Milwaukee County Sheriff's Office inventory #25-000719-8 | Case No. 25 MJ 77 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 924(c); 21 USC 841(a)(1) | possession of a firearm in furtherance of a drug trafficking offense; possession with intent to distribute controlled substances |

The application is based on these facts:
Please see affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Alexis Krusic ATF-TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 06/06/2025

*Judge's signature*

City and state: Milwaukee, WI    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property- a cell phone described in Attachment B.

2. I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee IV Field Office. I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and a TFO since March of 2020. My duties as a TFO with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

3. I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information

on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

4. I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

5. I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

6. I have participated in firearm and drug trafficking investigations that involved the search of social media, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

7. As a Task Force Officer, I have also participated in the investigation of narcotics-related offenses, which have included the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. Through my training and experience, I have become aware of the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.

8. I also know from training and experience that it is common for drug users, drug dealers, firearm traffickers and firearm possessors to communicate by cellular phone through a variety of electronic media. The participants in these criminal organizations can use text (SMS) messaging, iMessage, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat and Twitter to communicate about and organize criminal activity.

9. I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers (LEOs), including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other LEOs about this and other investigations; (c) discussions I personally had concerning this investigation with other experienced investigators; (d) public records; (e) records obtained from law enforcement databases; (f) my training and experience as an ATF task force officer; and (g) the training and experience of other LEOs involved in this investigation.

10. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause to believe that the electronic devices described herein contain evidence relating to violations of Title 18, United States Code, Section 924(c), Use of Firearm in Federal Drug Crime; and Title 21, United States Code Section 841(a)(1), possession with intent to

distribute a controlled substance that have been committed by Abigail Lares (F/H, XX/XX/2000) and other known and unknown subjects. There is probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

1. The property to be searched is a dark purple Apple iPhone [with cracked screen in upper left corner] with a clear phone case with a bear on the back, which is currently in the custody of the Milwaukee County Sheriff's Office, which can be further identified as the following:

- Dark purple Apple iPhone [with cracked screen in upper left corner] with a clear phone case with a bear on the back- Milwaukee County Sheriff's Office inventory #25-000719-8

2. The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

11. That your affiant submits this affidavit in support of a search warrant relating to one Dark Purple Apple iPhone cellular phone; which property is being kept and maintained at the Milwaukee County Sheriff's Office, 821 West State Street, 209, Milwaukee, Wisconsin 53233.

12. On February 22, 2025 at approximately 1017 hours, northbound I-94 at Lapham Avenue, in the State of Wisconsin, County of Milwaukee, a traffic stop was conducted by a Milwaukee County Sheriff's Office Deputy.

4

13. The traffic stop was conducted on a Black Hyundai Sante Fe Sport (VIN: 5XYZWDLAXDG064869) bearing a non-legible registration plate on the rear and traevling at a high rate of speed.

14. The Deputy positively identified the occupants of the vehicle, with the driver identified as Jadyn CHANTHAVONG (M/A, XX/XX/2001), and the front passenger identified as Abigail I LARES (F/H, XX/XX/2000). Both identifications were made via WI Identification Cards.

15. Neither CHANTHAVONG nor LARES had a valid driver's license. Both occupants were placed in the rear of the squad for conveyance off the freeway and a tow was called due to having no valid driver on scene at the time of the traffic stop.

16. Per Milwaukee County Sheriff's Office policy, when a vehicle is towed from a scene, an inventory of the vehicle must be completed to inventory/search for valuables within the vehicle, to include locked compartments.

17. During this inventory of the Hyundai, the Deputy located a black Glock 19 with serial number (SN) BUYE415 that was located in the locked glovebox of the vehicle. The Glock was loaded with a magazine of [12] 9mm rounds and [1] 9mm round in the chamber.

18. Also located in the locked glovebox was [5] grams of a dark brown rock-like substance which field-tested positive for the presence of fentanyl and heroin, [46] grams of a large white rock-like substance, which field-tested positive for the presence of fentanyl and cocaine, [11] grams of a large white rock-like substance, which field-tested positive for the presence of cocaine and fentanyl, [8] grams of broken white rock-like substance, which field-tested positive for the presence of fentanyl and cocaine; and the following breakdown

of US currency: [1] $100 bill, [45] $20 bills, [2] $10 bills, [5] $20 bills, and [14] $1 bills, totaling $1,159.00.

19. A non-serialized privately made firearm (PMF) AR-style platform pistol was located in a grey and black backpack that was found behind the driver's seat on the floorboard. This firearm was equipped with a Machingun Conversion Device (MCD). This pistol was loaded with a drum magazine that contained [56] .223 caliber bullets.

20. Also located in this same backpack was a magazine loaded with [28] .223 caliber bullets.

21. A purse was located behind the front drivers seat that contained [4] $100 bills, [4] $50 bills; [2] $5 bills; and [123] $1 bills, totaling $724.00.

22. There was a second grey backpack located behind the passenger front seat of the vehicle. Inside of this backpack, the following was located: a green leafy substance [279] grams and field-tested positive for the presence of tetrahydrocannabinol (THC). Another bag with [30] grams of a green leafy substance was found and it field-tested positive for the presence of tetrahydrocannabinol (THC).

23. One dark purple Iphone with a clear case and a bear on the back was in possession of LARES. Two other cell phones were located in the center console of the Hyundai that were claimed by CHANTHAVONG. These two other devices were previously extracted.

24. A previous extraction was attempted of this dark purple Apple iPhone that this warrant pertains to. Due to limitations of the extraction technology, the purple iPhone was not able to be downloaded on the date and time that the first search warrant was signed [in

the Milwaukee County State Circuit Court]. The utilized software is now compatible, which has prompted the application for this second search warrant.

25. The affiant knows through training and experience that the possession of this amount of currency in the manner in which it was recovered, and the amount of controlled substances is indicative of street level drug-trafficking.

26. Based on my training and experience, I know it to be common for street level drug traffickers to possess drugs and multiple cell phones to assist in the commission of drug distribution.

## CONCLUSION

27. Both CHANTHAVONG and LARES have shown behavior of being involved in the possession and distribution of narcotics. Previous review of one of CHANTHAVONG's device extractions (black Apple iPhone, MCSO Inventory # 25-000719-9) contained narcotic conversations/chats and photos of narcotics and firearms. LARES' purse recovered in her vehicle contained US currency with varying denominations that could be consistent with street-level narcotics sales.

## TECHNICAL TERMS

28. Based on my training and experience, I use the following technical terms to convey the following meanings:

29. Wireless cellphone: A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These cellphone send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone.

A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone. In addition to enabling voice communications, wireless cellphone offer a broad range of capabilities. These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

30. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

31. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its

source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

32. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

33. Based on my training, experience, and research, I know that these cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35. There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium,

9

deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However,

10

it is technically possible to delete this information.

  d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

36.  Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

11

information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

12

37. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

38. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

# ATTACHMENT A

**Property to Be Searched** Cellular phone further described as;

      a. Dark purple Apple iPhone [with cracked screen in upper left corner] with a clear phone case with a bear on the back- Milwaukee County Sheriff's Office inventory #25-000719-8

## ATTACHMENT B

**Particular Things to be Seized**

All records on the cellular phone listed under Milwaukee County Sheriff's Office inventory 25-000719-8 related to violations of Title 18, United States Code, 924(c), Use of Firearm in Federal Drug Crime; and Title 21, United States Code Section 841(a)(1), possession with intent to distribute a controlled substance that have been committed by Abigail Lares (F/H, XX/XX/2000) and other known and unknown subjects.

1. Including:

    a. lists of contacts with any identifying information;

    b. photographs, videos, or other media storage connected to drugs and firearms;

    c. types, amounts, and prices of drugs and firearms purchased/sold;

    d. any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    e. all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms.

2. Any and all financial records connected to the purchase/sale of firearms or drugs;

3. Documentation establishing the identity of the individuals in control of residences associated with firearms and drug trafficking;

4. Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

5. Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6. Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds which may contain evidence of drug trafficking proceeds or firearms acqusitions;

8. Lists of firearm and drug customers and related identifying information;

9. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10. Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data which may contain evidence of drug trafficking and firearm acquisition or possession.

13. Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys for locations which may contain evidence of drug trafficking or firearms possession or acquisition.

14. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15. Records evidencing the use of the Internet Protocol address, including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.